The final case is Stritt v. Private Identity, LLC, docket number 25-1431. Counselor Liskow? Yes, sir. Do you know how to pronounce that correctly? Liskow, yes, sir. You have five minutes. I mean, excuse me. You're reserved five minutes for rebuttal. Yes, sir. Proceed. You may start. Thank you. May it please the court, James Liskow on behalf of your appellant, Brian Streit. So this case arises out of, I believe it's 15 different patents. We're also talking about biometrics here, but we're not going to get into the nitty gritty, at least I hope not because I am not the person asked about that in the app. So there are two groupings, if you will, of patents. There is fully homomorphic encryption, and then there is the helper networks, which are, regardless of how the patents were applied for, they are different groupings of  The FHE, or the fully homomorphic encryption, is a biometric security system where you, in traditional encryption, you would encrypt the data, you would have a key to de-encrypt, you would send the data, you would send the key, and then the recipient would de-encrypt the data. Fully homomorphic encryption allows you to skip a step, and you encrypt the data, the key here is your biometrics, or your face, or your thumbprint, or what have you, and by utilizing the key, you de-encrypt the data without actually having to de-encrypt it. You use it in some encrypted form, you can modify the data while it's still encrypted, and then leave it alone, as opposed to de-encrypting it, re-encrypting it, and going through all that rigmarole, so you've saved yourself a step. The helper networks allow, and they're very helpful for the FHE, allow you to sharpen up the biometric so that you can see it in its application. Those groupings I've mentioned, the applications will go far beyond just the biometrics, but they're obviously important for it. So my client, Dr. Streit, along with his father, invented these things over the course of some years. The father, Mr. Streit, or Scott Streit, was a member of the defendant in the policy of private identity. The owner, the other owner, the majority owner, Mr. Pollard, approached my client and said, you've invented this, I'd like you to sign an assignment. So we're kind of aware with some of the background facts here, but as to some of the legal questions, my initial concern is whether there's been a valid assignment, whether the assignment was valid, and if that validity question can only be decided by a state court versus by a district court. Well, I think there's another issue in there, and that is that the action that we followed was to correct the inventorship of the patents themselves, because the patents themselves, there may be a validity issue with them, which is not for this court today, but Dr. Streit doesn't appear on the patents. So that has to be corrected first. And the district court found that Dr. Streit, because he signed the assignment, and I'm going to call it the assignment because that's what the document is, but we don't believe it's valid, that because he'd signed this, he had no standing. So he's left in kind of a catch-22, he can't contest the patent because he signed the assignment, and the assignment's there, so he can't... You're familiar with our Larson case, right? Yes, sir. And in Larson, the facts are pretty similar to the situation here, we had a plaintiff in that case that wanted to seek to have the inventorship corrected for a patent, but then it turned out there at least appeared to be a facially valid assignment in that case where the plaintiff had signed away any and all access to the patent. And so therefore, there was a constitutional standing problem for that plaintiff to come into district court to seek correction of inventorship because the only way he could get any... The only way he could get any interest was, or financial interest in the patents is by being an owner of some sort or an inventor, and he had to first resolve and overcome the assignment agreement, which I presume would have had to have happened in state court because it was a state law issue there on whether or not the contract was valid. Here, again, there's an argument here, there's a debate here over whether the validity of this assignment is a state law issue or a federal law issue. If it's, as you say, a state law issue, then this case lines up quite clearly with Larson, because again, you want to pull down a facially valid assignment. It has all the hallmarks of a legal assignment, and so you need to overcome that presumption. And so just like Larson did too, and we said you couldn't do that in this type of proceeding because you didn't have standing yet, you needed to pull down the assignment before you could get to the correction of inventorship. First off, I disagree with the premise that the assignment was valid, even facially valid, because if you look at the patents themselves, the applications to patents, Dr. Streit's name doesn't appear on them. So pursuant to 35 U.S.C. That's a patent validity question. We're talking about the validity of the assignment. Right. And 35 U.S.C. 261 says that a patent or patent rights have all the attributes of personal property. So you have federal law that controls at least what the assignment is supposed to look like, maybe not necessarily its validity, but on its face, the assignment is not valid because he would have to have been named in the patent to assign anything, and it never happened. The applications occurred before the assignment was assigned. Well, do you see that argument below? I don't see that as an issue on appeal. Yes, it is. Both. It's like a misunderstanding. I thought your main argument on appeal was that there was error by the district court in applying something other than state law in interpreting this contract. That's there too. And our position is that Texas law should have applied. Right. And to answer his honor's question, and maybe yours too, Judge, you have a document that says it's an assignment. It's invalid facially, to get to his question, because it does not refer to a patent that even includes the inventor's name. So it's facially invalid. But it says any and all rights, any rights. And so if the conclusion by the filers of patent applications were that Dr. Street maybe had some interesting contributions, but they didn't amount to the level of being listed as a co-inventor, so be it. But nevertheless, this is more of a belts and suspenders type of agreement than any and all rights that Dr. Street could argue that he has with respect to any of these patents or any patents relating to open inference holdings. He's giving them away right here, right now. So let's just move past that question. Yes, sir. Another question I have is you're claiming, or Dr. Street is claiming, that he never received any consideration. That's correct. And he's got this one very bare bones statement in an affidavit saying, I received no consideration. It's also in the top line of this assignment agreement says, for good and valuable consideration, the receipt of which is hereby acknowledged, I, the undersigned assigner hereby, assign away everything. And then he, this is a unilateral agreement. He's the, he's the one that signs it. He signs it under seal and he signed it, quote, under the panes of penalties and penalties of perjury. So this document, he is swearing to the world that he received good and valuable consideration. And, and this is at the time of the assignment. Then five years later, I guess something goes wrong. He's not happy with his dad and he files a complaint where he makes a bare bones statement that he didn't receive consideration. So which statement of Dr. Street was untrue, the one he filed here in 2018 with the assignment or the one with his affidavit, with his complaint five years later? I would submit that the document in your hand, sir, was written by the appellee, that Dr. Street should not have signed it. He signed it. He did. He shouldn't have. But what's important is under the panes and penalties of perjury under the laws of the United States of America and under Texas law, Texas law, which is what this case should be decided under talks about how filing or signing a document under seal imports consideration. But the courts, the Texas courts have made clear that that merely creates confess to it though. He confessed that he did receive consideration. It's, I don't believe it has an affidavit at the, at the end of it too, but it, the language is what the language is, but Texas courts would treat that as creating a presumption, which Dr. Tell me what happened here. How come in 2018, he's willing to sign this document under, you know, the panes and penalties of perjury. And then five years later, he, he sues his father. In his affidavit, which is included as part of the opposition, the motion, both motions dismissed, I believe he says that he was very young, that Mr. Pollard told him they're all going to laugh at you. Nobody's going to believe that you better sign this so that nobody thinks that you were doing your dad's work. That is his explanation. He puts it under, he says it under oath in the affidavit. So he has a change of heart five years later. Yes, sir. And he's allowed to. There's nothing that prohibits him from doing that. There's nothing in that document that says that he can't bring this suit specifically and this is the addition of the issuance of additional, uh, pens that, that, uh, prompted him to sue. It's not within the record. That's part of it, judge. I think the, what's also not in the record is that the father and the partner had a falling out and he didn't want to see the company. Why is, why is the state of Texas, the, the, uh, forum, the choice forum? Is it because that's where the agreement, this agreement was signed and motorized? I don't believe it's the choice forum. I believe that the district court was empowered to do it too, because the parties were, uh, diverse. Uh, and we were talking about an issue of federal law, but it's the correct choice of law because that's where Dr. Strike signed it. So that's the last, last place where that had any connection to the document before he, uh, put a signature on it. Is that your argument? This has to go back to a state court? No, sir. Our argument is that it has to go back to the federal court. And that the, to apply state law and not to apply the Keller case, which shouldn't exist at all because it, that court didn't even get subject matter jurisdiction, but to apply Texas law and to look at Texas law where Texas law says that an assignment is basically a contract. Okay. You're at your rebuttal time. Oh, I, I thank you, sir. May it please the court. I'd like to address three points. First, appellant signed a document that said, I hereby assign. That was a present transfer of his parent rights and his future rights as established by this court in the Stanford re Roche case, the DDB case, and I mation, all of which are cited in our brief. And he now asks this court to undo that assignment by treating it as a contract. But whether you apply federal law or Texas law, the result is the same. A conveying, do you think that we can apply Texas law in the first instance, because I don't, so I believe what the court below did. Your honor is that it held that federal law applies, which we believe is correct. And which we believe this court could affirm as an alternative holding. The court did go on to point out that the law would be the same under Texas law in any event. Um, so we believe that alternative holding was correct. Where was that in the district court? So the decision, the lower court's decision is the first few pages of the appendix and page five of the decision, which is six of the appendix. Uh, the court points to the fact that plaintiffs attempt to invoke Texas contract laws on availing, and she goes on to say the Keller case, which is an eighth circuit decision. But in particular, at the bottom of page five, so page six of the appendix, she cites the restatement second of contracts three, three, two. And what we had pointed out below is that restatement section three, three, two has been repeatedly adopted by the Texas courts. So there's the El Paso case, which we cite as well as the Allen case, both of which are Texas decisions holding that section three, three, two. Within the four corners of her decision that she was applying to Texas law. I mean, you're saying that we should assume that she understood that this restatement was applying, saying, yes, this applies to Texas law too, but it's hard to read it that way. This whole paragraph reads as if what the judge is saying is your attempt to Texas contract law is unavailing because federal courts agree all these other things, right? There, I don't see where Texas state laws will apply. Yes, Your Honor. I understand the question. What actually happened is the source of this section three, three, two citation that the judge provided comes from the authorities that we cited to her at the time invoking Texas law. Is the block quote in her opinion correct? The block quote of the restatement is absolutely correct, Your Honor. That quotation, this quote of ethics at the bottom of a six that goes to the top of a seven. Yes. I didn't see that in section three, three, two of the restatement second of contracts. Uh, yes, Your Honor. Restate comes from Keller. I mean, restatement section three, three, two of contracts says unless a contrary intention is manifested, a gratuitous assignment is irrevocable. If a, the assignment is in writing either signed under seal that is delivered or accompanied by a delivery, et cetera, et cetera. And then it defines what a gratuitous assignment is in section five, where it says an assignment is gratuitous unless it is given or taken in exchange for a performance or return promise. That's different than what's in the block quote. Yeah. I was talking about the block quote in the district court's opinion. Oh, I'm sorry, Your Honor. Yes. That appears to be from one of the Texas cases applying step section three, three, two. I understand the question now. Sorry. What Texas case? So there are two Texas cases in particular that we cited in our brief. There's Texas case says this exact quote, you know, it's not from three, three, two itself. I believe it would be court claims that it's from three, three, two, but that's an obvious mistake. You told me it was from section three, three, two. I'm sorry. I misspoke, Your Honor. I, I, I misunderstood. I apologize. I couldn't have been clearer. I said at the bottom of page A6 to the top of A7, there's a block quote in district court's opinion. Yes, Your Honor. I apologize for that. And now you're telling me it's from a Texas state court opinion. Let me verify that before I confirm my understanding. You told me it was. Um, okay. Um, I'm, I'm trying to verify whether that exact language is. You told me it was from a Texas state court opinion. Which one? What's the name? Give me the site. Give me the pinpoint and read it out loud to me. You sounded very convinced. Although two minutes earlier, you were very convinced that came from section three, three, two of the statement. Second contact. I will, I will try to find that directly, Your Honor. What I intended to say, and I apologize if I didn't, was that the principle that she was applying here is from the Texas courts. So the El Paso case and the university of Texas versus Allen case are the two in particular. Um, and those aren't cited at all by the district court. They are not expressly cited. No, that's correct. We did cite them. I found the quote in the meantime, while you've been trying to answer these questions, it's from Keller, which is not a Texas state court case. You might want to take a look at it. It's at page, um, 124 to 125. Right. So, okay. So listening, that's what I told you four minutes ago. It was from Keller. I apologize, Your Honor. So what Keller then is, you're correct. It's not a Texas case. It's an eighth circuit case applying the restatement. And then the point that we would make is that the Texas courts have adopted the restatement as well. So Keller is effectively a restatement. Keller also, it says under Arkansas law. So there were two, and it seems to be that they may be the discussion of the restatement. It's just confirmatory, if you will. So, Your Honor, there were two bases for Keller. One was indeed Arkansas state law, as Your Honor points out. But then Keller goes on to say in the alternative, we affirm the district court on the ground that the patent assignment was a completed voluntary conveyance. And so we understand Keller to have relied on two bases. One was the Arkansas law, but the other was the fact that a completed voluntary conveyance does not, is irrevocable and cannot be attacked for lack of consideration. And that cites NEBCO, which the court cited below. And it says an assignment of a chosen action, which the restatement says a patent is, is valid after delivery, even though made without consideration. And Appellant makes an issue of saying that the eighth circuit decision could not have been decided because, or was not properly decided because of a jurisdictional issue that it should have gone to this court. But that argument is self-defeating because their position is that, that Keller was improperly decided under federal law, which should have gone to this court. But then they say that state law applies. So that's internally inconsistent. If it's state law that applies, then is Larson essentially on all fours here and we have to dismiss this case for lack of constitutional standard? Um, I don't, if, oh, I'm sorry. If state law applies, then I believe there would still have been diversity jurisdiction, um, as Appellant argued to have brought the case in federal court on that basis, uh, and the court could have applied. But there wouldn't be constitutional standing because again, that would be a state law issue. I mean, that's, that's what happened in Larson. That is what happened in Larson, Your Honor. Yes. Um, the court, we, we would argue that federal law does apply here and that the reason is that there's a question of whether the assignment invokes a present transfer or a promise for a future transfer. And what, as I understand the court, this court to have held in, in, uh, Stanford and in I-nation and in DDB is that in this, that particular set of cases, the circumstances, it becomes a federal question, even though the underlying issue would normally have been one of state law. I believe this court has carved out an exception saying that that question of whether it's a present transfer or a promise for a future transfer is an issue of federal law. So we believe the court below did have jurisdiction to resolve it on that basis. Um, arguably the reliance on the restatement then becomes dictum, but certainly the federal law application would be consistent with this court's prior holdings that the hereby assigned language is a present transfer. Both of the patents as they existed at the time and of future rights as defined in the, uh, in the assignment document. Um, so for that reason, we don't believe that the choice of law question is dispositive on the merits. Uh, the assignment recites consideration as well as your honor noted. So even if Texas law did require consideration, which it doesn't because it applies to the restatement, there would be a binding admission of consideration for the reasons your honor noted. And for the additional reason that under Texas law, you cannot defeat consideration by a bare legal pronouncement in a declaration that there was no consideration. You have to be more specific than that. And we cited Williams versus Hill, excuse me, and Stoltz versus Honeycutt for the proposition that the appellant would have had to not just claim generically that he got nothing, he would have actually had to point to what within the four corners of this assignment document he was owed. And there is nothing within the four corners of this document that he was supposed to get. So he has failed to rebut the presumption of consideration. And if I might turn briefly to the issue of the scope of the assignment, uh, the scope is very broad. Uh, first of all, the appellant made a judicial admission in section in paragraphs 18, as well as 28 through 38 of his complaint that all of the patents at issue, uh, follow from, uh, the, the original set of four patents. But even if that, and so he's pled himself out of his argument that, uh, that they are distinguishable for purposes of the assignment, but even if that were not the case, the language of the assignment is very broad. It also has two additional catch-all provisions, one of which states that all other applications are covered. And then a further one, which he never addressed below. And so that was waived, which says that all patents, I want to make sure I get the language right, to and any patent application relating to any matter relating to OIH, which is the, the earlier name of private identity. In other words, any patent having to do with private identities business is covered by this. And it cannot plausibly be argued that patents that they filed for and obtained would have nothing to do with their business. And even if it could have been argued, the issue was waived below. Of the other 11 patents that are not listed of the four applications listed, are they all continuing applications of one of the four? The, I want to just know, your Honor, as a factual matter, as a pleading matter, he did allege that they were. And so the court did what it was supposed to do, which is under Rule 12C, rely on and take as true the representations made by the plaintiff. But I want to be very transparent to the court that we believe that statement was in error. There was a combination. Some were continuations, some were CIPs, and some were new applications. But all of those are covered within the language of the assignment as a result of these two additional catch-all provisions. It does not just cover continuations, for example, as in your recent Cosum decision. It covers much more broadly any patent application that has anything to do with private ID's business, and it covers all other applications. So it couldn't be broader. So just to recap on the underlying point, the federal law is applicable here because in Stanford, in I-Mation, and in DDB, this court carved out an exception to the principle that it's a matter of state law in situations exactly like this where the dispute is over whether there was a present transfer of the patents and of future rights. And that is exactly what there was when he signed the statement saying, I hereby assign. And for that reason, we ask that the court affirm the lower court. Thank you. Thank you, Your Honor. Thank you. May it please the court again, James Liskow for your appellant. The restatement section you've been talking about with my opponent here quite clearly says it's for voluntary, gratuitous assignments, and below the appellee repeatedly, unequivocally, and categorically said there was no donative intent. They are not claiming that the assignment was gratuitous. And the Texas courts and the cases they rely on all say the same thing other than this Keller case, which is kind of an outlier talking about Arkansas law. And that is for an assignment to be valid, you need to either have consideration or it's equivalent. So there needs to be a pledge. I'm going to pay off a debt or another equivalent would be gratuity, donative intent, a gift. And they repeatedly deny it. They say that's not the case here. So there needed to be consideration. There was never an evidentiary hearing. If there was an evidentiary hearing and Her Honor below Judge Gallagher said, well, I just don't believe you. Well, then that would be pretty much no appeal. I don't believe you. I've made a factual finding. We never got that far. This was decided on motion to dismiss. We have all of these patents, getting to the other part of this case, we have all of these patents. He says they're different things. She made no technical analysis. She just says, well, they're all the same thing in the face of the amended complaint, which specifically said they couldn't even be contemplated and they're not the same thing at paragraph thirty nine. So I think I think that's a very simple decision that that that those were not covered by the assignment and this suggestion that, well, it says anything to do with open inferences business. Well, that sounds like a factual determination as to what the parties believed at the time and how that was written. So for all these reasons, this court should send this case back with instructions to Judge Gallagher to conduct the factual inquiry, to conduct the evidentiary hearing, see what was what and to determine whether the assignment was valid because she never did that. She just assumed it and looked at law that should not exist and laws that don't apply. She should have looked at the at the precedent from this court and from Texas law, which was clearly what applied to whether the the assignment was valid, which it was not. So with that, I very much thank you for your time. Thank you very much. We thank all the parties for arguments this morning. Cases are taken into submission and this court rises in recess.